1DAVID S. GORBATY, Judge.
In this appeal, Reliable Home Health Care, Inc. (“Rehable”) appeals the judgment of the workers’ compensation court finding that it overbilled Travelers Insurance Company (“Travelers”) for nursing care provided to Theresa Robinson. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY

This lawsuit arises out of a billing dispute between Travelers and Rehable, who provided in-home nursing care to injured worker Theresa Robinson. Ms. Robin *1041 son’s claim was settled and is not at issue here.
Reliable provided skilled nursing care on an hourly basis from 1996 through 1998 for the home health care of Theresa Robinson. Dr. Warren Gottsegen ordered “skilled nursing” care first for eight hours per day. This amount was later increased to sixteen hours per day.
The trial court found that no convincing evidence was presented that Ms. Robinson required only a Registered Nurse for her skilled nursing care. The trial | ..court further ruled that both Registered Nurse services and Licensed Practical Nurse services were appropriate skilled nursing care for Ms. Robinson, depending on the duties being performed each day. The trial court additionally held that the hourly amounts charged by Reliable were too high, and that the amounts due must be recalculated at a lower hourly rate. Finally, the trial court ruled that Travelers must be reimbursed, or given a credit for, $625,821.13, the amount Travelers had overpaid. Reliable subsequently filed this appeal.

DISCUSSION

Reliable asserts the following assignments of error:
1. The trial court erred in not awarding judgment in favor of Reliable for the “skilled nursing care” it provided to claimant, Theresa Robinson. Further, the trial court erred in ruling that no convincing evidence was presented showing an oral contract existed between Travelers and Reliable for hourly skilled nursing care at $100.00 per hour. Additionally, the trial court erred in not awarding Reliable $100.00 per hour for past skilled nursing care provided to Theresa Robinson pursuant to its agreement with appellee, Travelers.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of review. Smith v. Louisiana Dept. of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132. In applying the manifest error-elearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s | ^conclusion was a reasonable one. Stobart v. State, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882.
Reliable claimed to have a verbal contract with Travelers. The burden of proof in an action for breach of contract is on the party claiming rights under the contract. Vignette Publications, Inc. v. Harborview Enterprises, Inc., 2000-1711 (La.App. 4 Cir. 9/12/01), 799 So.2d 531. The existence of the contract and its terms must be proved by a preponderance of the evidence. Bond v. Allemand, 632 So.2d 326 (La.App. 1 Cir.1993).
Mr. David Butler, a supervisor at Travelers, testified that there was no contract or agreement between Travelers and Reliable. He stated that the only employees who had authority to enter into contracts with healthcare providers are Regional Managed Care Representatives. Mr. Butler had never spoken with Mr. Louis Age, the administrator for appellant, about his charges for services before they agreed to employ Reliable as Ms. Robinson’s healthcare provider. The adjuster handling the case did not enter into a contract with Rehable to pay a certain amount for the services being provided. Further, he testified that there is no instance of Travelers agreeing to pay more than what the fee schedule provides.
Ms. Suzanne Klein, a Travelers employee who handled Ms. Robinson’s file, cor *1042 roborated Mr. Butler’s testimony that adjusters do not have the authority to 1¿enter into contracts. Ms. Klein stated that there was no indication anywhere in the file that Travelers had agreed to pay a certain amount to Reliable for their services.
Ms. Alberta Frishon Gardner, who was the first adjuster to deal with Reliable, did not have any conversation with anyone at Reliable regarding the charges that would be made by Reliable. She never agreed verbally, or in writing to pay $100 per hour for the services being rendered to Ms. Robinson.
At trial, Mr. Louis Age testified that Reliable was obligated to charge Travelers the same amount that Reliable charged Medicare for skilled nursing care. At his deposition, he indicated that the decision to charge Travelers $100 per hour was “not a decision that necessarily involved anybody.” Mr. Age stated that he contacted Travelers to verify coverage. When Ms. Gardner returned Mr. Age’s call, seeking to “verify rates,” he claims that he advised her that Reliable charged $110 per hour, and that Ms. Gardner countered, seeking $100 per hour for their services. It is this conversation that Mr. Age contends formed the basis of the verbal contract between Travelers and Reliable.
On cross-examination, Mr. Age modified his story somewhat. He speculated that Ms. Robinson might have been the first person to call and seek Reliable’s services, as opposed to her doctor calling to refer Ms. Robinson to them. He also stated that Ms. Gardner’s first contact with Reliable might not have been a conversation with him regarding their rates, but that she might have actually entered into the alleged agreement after speaking with Mr. Age’s daughter, Iyanna. He was also not entirely sure whether he actually had the alleged conversation | Kregarding rates with Ms. Gardner before Reliable began rendering treatment, or after Reliable received Travelers’ first payment. Upon reflection, he stated that he did speak with Ms. Gardner prior to Reliable rendering any treatment, but that it was an extremely short conversation.
In the case at bar, other than the testimony of Mr. Age, which he subsequently corrected, there is no evidence to support Reliable’s contention that Travelers agreed to pay $100 per hour. Further, Travelers did not tacitly agree to pay $100 per hour. A party must have full and actual knowledge of the obligation before it can agree to it. Everett v. Foxwood Properties, 584 So.2d 1233 (La.App. 2 Cir.1991). In this matter, Travelers was unaware of the billing error until Marianna Hixon pointed it out to them. Once Travelers was aware, it immediately took corrective action. As such, we find that there was sufficient evidence to support the ruling of the trial court. This assignment of error is without merit.
2. The trial court erred in ruling that in 1990, the reasonable and customary charge for a Licensed Practical Nurse (“LPN”) was $30.00 per hour and $40.00 for a Registered Nurse (“RN”), and that amount is what should have been billed and received by Reliable for the skilled nursing care provided to claimant.
On the second day of trial, Mr. Butler detailed the process of submitting and releasing bills for payment in Travelers’ office. He explained that had the proper code been submitted when Reliable sought payment for Ms. Robinson’s treatment, the computer would have priced the bill at $44/hour. However, because the code submitted by Reliable matched with the charge for those services, the computer did |finot catch the error. It was not until Marianna Hixon, who was hired by Travelers to review Ms. Robinson’s case, *1043 became involved that Travelers realized that Reliable had been submitting the wrong code for the services provided to Ms. Robinson. Travelers immediately contacted Rehable, and ultimately stopped paying the bills submitted by Reliable, taking the position that they were entitled to a credit based on the overpayment.
In Adler v. Hospital Service Ass’n, 278 So.2d 177 (La.App. 4 Cir.1973), the court stated, “[t]he reasonableness of a particular medical fee depends on what is customary in a community for similar [services and procedures].” Testimony elicited from Ms. Hixon at trial established that the reasonable and customary rate for R.N. hourly care is $40-45 per hour, and the reasonable and customary rate for L.P.N. hourly care is $30-35 per hour.
Ms. Hixon also discussed the difference between skilled nursing visit care, skilled nursing hourly care, and L.P.N. private care, along with the corresponding customary rates for each. Skilled nursing visit care is a visit by an R.N., who comes to the home to provide one service, or skill, and then leaves. The usual and customary charge for R.N. visit care is $100 per hour. Ms. Hixon noted that hourly care is completely different from visit care. Unlike visit care, where the care is task-oriented and lasts a short period of time, hourly care is ongoing and is performed in shifts.
Ms. Hixon discovered that Reliable was billing $110 per hour using the W-0050 code, which is for nursing visits. Travelers’ system would reorganize the |7code and reprice the bill at $100 per hour, the appropriate fee for W-0050 in the fee schedule. Ms. Hixon stated that Ms. Robinson was receiving sixteen hours per day of hourly care, not visit care. She further opined that Ms. Robinson did not need an R.N. to perform the services, and that attendant care would have been more appropriate.
We conclude that Reliable was mistakenly charging the rate customarily used for nursing visit care, $100 per hour. The rate for hourly nursing care is substantially less than the rate for visit care, as established by Ms. Hixon’s testimony. As such, we find no error in this ruling of the trial court. This assignment of error lacks merit.
3. The trial court erred in ruling that sixteen hours of R.N. care was unreasonable and unnecessary.
The trial court’s determinations with regard to the credibility of witnesses and the discharge of the claimant’s burden of proof are factual issues and should not be disturbed on appeal in the absence of manifest error. Bruno v. Harbert Int’l, Inc., 598 So.2d 357 (La.1992). The workers’ compensation judge’s assessments of the weight of the medical evidence are not to be disturbed unless clearly wrong. Chambers v. Louisiana Pacific Mfg., Inc., 97-1188 (La.App. 3 Cir. 4/22/98), 712 So.2d 608.
Dr. Warren Gottsegen, claimant’s treating physician, ordered skilled nursing care for Ms. Robinson. He testified that he believed that Ms. Robinson needed only attendant care for many of her needs, and R.N. care for things such as 18administering medications and drugs. He specifically stated that she did not need full-time R.N. care.
Ms. Wilhemina Fulgenzi was accepted at trial as an expert in nursing and utlilization review. Travelers hired Ms. Fulgenzi to review the nursing notes and give an opinion as to whether the services provided by Reliable were nursing visits or hourly services. After reviewing all of the nursing notes and looked at the doctor’s plan of treatment, Ms. Fulgenzi concluded that Dr. Gottsegen ordered skilled nursing care, and that Ms. Robinson did not always *1044 need an R.N. for the level of care that she was receiving. She noted that most of the services provided were not even “skilled,” but were mostly maintenance-related. She concluded that although Ms. Robinson occasionally required R.N. care, she did not need sixteen hours of continuous R.N. care.
Reliable’s interpretation of the nursing care ordered by Dr. Gottsegen was unreasonable and unnecessary. There was no evidence presented that supported the need for continuous R.N. care as claimant received. Reliable rendered continuous hourly care to Ms. Robinson, not continuous visit care. This assignment of error lacks merit.
4. The trial court erred in ruling that Travelers had overpaid Reliable by $625,821.13, and that Travelers is entitled to a credit of that amount for any charges rendered by Reliable after the last payment date by Travelers. The trial court also erred in ruling that all services rendered after Travelers stopped paying Reliable must be re-calculated at the rate of $30.00 per hour for all tasks that could 19have been done by an LPN, and $40.00 per hour for all tasks that could be done by an RN, and that Reliable owes Travelers $625,821.13 less the amount to be calculated above.
As discussed above, we find that Reliable provided hourly care to Ms. Robinson and billed Travelers at the rate for visit care. The evidence also showed that R.N. care was not necessary for all of the services provided. Travelers paid Reliable for services that were not rendered. As such, Travelers is entitled to a credit for the amount it overpaid. This assignment of error lacks merit.
5. The trial court erred in not finding Travelers to be arbitrary and capricious in failing to pay Reliable for the care provided to Theresa Robinson, and is thus liable for statutory penalties, costs, and attorneys’ fees.
La. R.S. 23:1201 provides for penalties and attorney fees for the failure to timely pay or authorize claims. It also provides that “[t]his Subsection shall not apply if the claim is reasonably controverted ...”
The burden of proving entitlement to a penalty is on claimant. Washington v. Lyon’s Specialty Co., 96-0263, p. 13 (La.App. 1 Cir. 11/8/96), 683 So.2d 367, 376. Because La. R.S. 23:1201 is penal in nature, a strict and narrow construction is necessary in determining whether an award of a penalty is appropriate. Id.
We find that this claim was reasonably controverted. We also note that plaintiffs provided no testimony or evidence of arbitrary or capricious behavior on the part of defendant. As such, attorneys’ fees and penalties were properly not awarded.
I ^CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

McKAY, J„ DISSENTS WITH REASONS.